IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EDWIN AYALA ROSARIO,

    Plaintiff,

    v.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO. 14-1633 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Edwin Ayala Rosario ("Plaintiff") filed this action to obtain judicial review of the final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security ("Commissioner" or "Defendant"), denying his application for disability benefits. (Docket No. 1).[1] On August 26, 2014, Plaintiff filed a consent to proceed before a United States Magistrate Judge. (Docket No. 6).[2] On December 12, 2014, the Commissioner answered the Complaint and filed a copy of the administrative record. (Docket Nos. 10 and 11). On February 4, 2015, Plaintiff filed his memorandum of law (Docket No. 12) and on April 6, 2015, the Commissioner filed her memorandum of law. (Docket No. 15). After careful review, the Court AFFIRMS the Commissioner's decision.

---

[1] 42 U.S.C. Sec. 405(g), provides for judicial review of the final decision of the Commissioner. "… [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing". Section 205(g).

[2] The government has already provided a general consent to proceed before a Magistrate Judge in all Social Security cases. Title 28 U.S.C. Section 636(b)(1)(A), (c)(1) and (c)(2); Fed.R.Civil P. 73(a).

## ADMINISTRATIVE AND PROCEDURAL HISTORY

On August 8, 2011, Plaintiff, a former hardware and lumberyard employee, filed an application for disability benefits, with an alleged onset date of disability of August 3, 2011. The application was initially denied, as was the reconsideration. (Tr. pp. 63-66 and 68-69). Plaintiff then requested an administrative hearing, which was held on May 7, 2013, where Plaintiff was present with counsel and testified regarding his alleged disabilities. (Tr. pp. 33-57). On August 6, 2013, the presiding Administrative Law Judge ("ALJ") issued an opinion, finding Plaintiff was not disabled from August 3, 2011 through the last insured date. (Tr. pp. 18-29). The ALJ enumerated the following findings of fact in his decision:

1. Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2013.

2. Plaintiff did not engage in any substantial gainful activity during the period from his alleged onset date of August 3, 2011 through his last insured date of March 31, 2013.

3. Through the last date insured, Plaintiff had the following severe impairment: depression.

4. Through the last date insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. Through the last date insured, Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the following

        nonexertional limitations: he is limited to unskilled, simple, repetitive work, avoiding contact with the public.

6. Through the last date insured, Plaintiff was unable to perform any past relevant work.

7. Plaintiff was born on August 23, 1969, and was 43 years old, which is defined as a younger individual, age 18-49, on the date last insured.

8. Plaintiff has a limited education and is not able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled" whether or not a claimant has transferable job skills.

10. Through the last date insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.[3]

11. Plaintiff was not under a disability, as defined in the Social Security Act, at any time from August 3, 2011, the alleged onset date, through March 31, 2013, the date last insured.

---

[3] At the hearing, the ALJ found that Plaintiff could perform the following jobs: merchandise marker, gluer or electronic worker. Yet, Plaintiff suffered from occasional asthma, and taking that into consideration, the ALJ then found that Plaintiff could be a merchandise marker, wire preparation machine tender, and electrical accessory assembler I, as they were "clean" jobs that had no fumes or odors. Although the ALJ's final decision indicated that Plaintiff could perform the "unclean" jobs instead of the "clean" jobs, this oversight by the ALJ is irrelevant for purposes of this decision, as all that is required is that plaintiff be able to perform some work. See §§ 404.1520(f) (The claimant would be entitled to disability benefits only if he/she is not able to perform any other work).

After analyzing all the factors, the ALJ opined that Plaintiff had the capacity for light unskilled work, and concluded that Plaintiff was therefore not disabled. (Tr. p. 28). The Appeals Council subsequently denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner, subject to review by this Court. (Tr. p. 1).

Plaintiff objects the ALJ's final decision denying him disability benefits, alleging that he failed to adequately assess the medical evidence when he gave little weight to Plaintiff's treating physician, Dr. Luis Rojas, and further, that he erred when he failed to give more weight to the testimony of Plaintiff's wife. Therefore, Plaintiff argues the ALJ's decision was not based on substantial evidence. The Commissioner, on the other hand, asserts there is substantial evidence to support the ALJ's conclusion, insofar as he properly considered other medical evidence and his decision to give partial weight to the testimony of Plaintiff's wife was proper.

**LEGAL ANALYSIS**

To establish entitlement to disability benefits, the burden is on the claimant to prove disability within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful

work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; see Bowen, 482 U.S. at 140-42; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, where he or she must determine whether the claimant has a medically severe impairment or combination of impairments. See §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step through which the ALJ determines whether the impairment prevents the claimant

from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e).

Once the ALJ determines that the claimant cannot perform his or her former kind of work, then the fifth and final step of the process demands a determination of whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform any other work. §§ 404.1520(f). In the case at bar, at step 5, the ALJ determined that, while Plaintiff was unable to return to his past work, he was able to perform other jobs that were available in the national economy.

## LEGAL ANALYSIS

The Court's review in this type of case is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. See Manso-Pizarro v. Sec'y of Health and Human Servs, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999). Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), *quoting* Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The court will set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a

legal error.  See Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez v. Sec'y of Health and Human Servs, 647 F.2d 218, 222 (1st Cir. 1981).

Plaintiff's first argument is that the ALJ failed to adequately assess the medical evidence when he gave little weight to Plaintiff's treating physician, Dr. Rojas.  The ALJ stated he gave little weight to Dr. Rojas' opinion because his findings and conclusions conflicted with other substantial evidence in the record.  It is important to note that courts must give deference to the ALJ's interpretation of the medical record and although an ALJ is not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion, upon the existence of conflicts in the medical record from the report and sources, it is for the ALJ and not this Court to resolve them.  See Nguyen v. Chater, 172 F.3d at 31; Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127 (1st Cir. 1981) (the resolutions of conflicts in the evidence and the determination of the ultimate question of disability is for him [the ALJ], not for the doctors or for the courts); see also Rodríguez v. Sec'y of Health and Human Servs., 647 F.2d at 222.

In the present case, the ALJ opined the consultative examination performed by Dr. Ricardo Diez-Delgado contradicted the opinion rendered by Plaintiff's treating physician, Dr. Rojas.  While this alone is not enough to disregard Dr. Rojas' opinion, Dr. Diez-Delgado's findings and conclusions were further bolstered by the opinions of the state physicians, Dr. Wanda Machado and Dr. E. Charles.  Furthermore, the ALJ opined that Plaintiff's testimony at the hearing also evidenced the findings and conclusions of the state doctors.  Thus, the ALJ had substantial evidence in the record in which to evaluate, weigh and opine on the contradictions he encountered in the record.

Turning now to those contradictions, Dr. Diez-Delgado was told by Plaintiff himself that he assisted with some house chores, took care of his personal hygiene, watched television, read the Bible, did light agriculture, maintained some relations (albeit superficial) with family members and neighbors, and sometimes attended church. (Tr. pp. 21-22). This testimony contradicts Dr. Rojas' diagnosis of marked difficulty in social functioning and marked restrictions of daily living.  Dr. Diez-Delgado also found that Plaintiff maintained his attention, could recite the calendar, recalled immediate and remote past events adequately, performed arithmetic calculations perfectly, which is also consistent with the agency's findings of Plaintiff being only moderately limited in these areas. (Tr. pp. 22 and 127-129).

Dr. Diez-Delgado further found the record did not evidence any hospitalizations at all, and that it was further devoid of any changes in medications.[4]  Thus, despite the allegations of the severity of his symptoms, the record evidenced that all treatment provided to Plaintiff was outpatient and the medications remained unchanged, in direct contravention to Dr. Rojas' findings that Plaintiff had suffered four periods of decompensation.

---

[4] Plaintiff takes issue with the fact the ALJ is not qualified "to interpret raw data in functional terms", and therefore, he could not opine regarding the dosage and medications taken.  The Court cannot agree.  The ALJ concluded the record evidenced no change in the medications and dosage given to Plaintiff over the relevant time period.  This is not interpreting raw medical data, but rather, simply looking at the record to see what medications and dosage were being administered to Plaintiff and noting they did not change.

Dr. Diez-Delgado assessed Plaintiff with a GAF score range of 55-60,[5] which showed moderate difficulty in several areas, but not complete impediments. (Tr. p. 371). A residual functional capacity assessment performed during November of 2011, the same month Dr. Diez-Delgado met with Plaintiff, bolstered Dr. Diez-Delgado's observations and conclusions, and found exactly the same symptoms and conditions. (Tr. pp. 122-130). It found Plaintiff moderately limited in some areas, yet found that he was still capable of understanding, retaining and comprehending simple basic word related directives of two or three steps. (Tr. p.127).

Finally, the ALJ had the opportunity to personally assess Plaintiff's demeanor at the hearing, thus allowing him an important opportunity to assess his credibility regarding his condition. Plaintiff takes issue with the fact that, since he was allegedly unable to fully develop answers to the questions posed by the ALJ, his short "yes" and "no" answers and the ALJ's perception of him because of these answers were unfair to his case. Yet, the burden is on Plaintiff to prove his disability, and he must do that by providing the ALJ with all the necessary tools (including signs, symptoms, findings, tests and personal testimony) to do so. The more information the ALJ has, the better equipped he is to deal with the issue at hand. The ALJ noted that Plaintiff was cooperative, calm, attentive and provided answers to all the questions presented. (Tr. p. 22). Although the Court might disagree on

---

[5] The Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living. The score is often given as a range. Since 2013, the GAF is no longer used in the DSM-5. A score 51 - 60 indicates moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

the degree (or lack) of "detail" that Plaintiff provided in his answers, it is for the ALJ and not this Court to assess issues of credibility. The ALJ was in the unique position to observe that.

In short, the ALJ found substantial evidence to sustain his conclusion of moderate restrictions for the applicable time period. He correctly afforded more weight to the conclusions of the agency's physician and specifically stated his reasons for doing so. See Gray v. Heckler, 760 F.2d 369, 373 (1st Cir. 1985) and Lester v. Chater, 81 F.3d 821 (9th Cir. 1995). The Court cannot find error in this.

As a second claim of error, Plaintiff avers the ALJ failed to give proper weight to his wife's testimony about his condition. As is well known, it is the ALJ's responsibility, as that of this Court, to review and develop the whole record. Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.1996) (*citing* Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993)). One reason for which an ALJ may discount lay testimony is that it conflicts with evidence. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).

The Court finds the ALJ's decision in this case met these standards, insofar as the record evidence found that Plaintiff was capable of assisting (and in fact, did assist) with some chores, took care of his personal hygiene, watched television, read the Bible, did light agriculture, attended medical appointments, maintained relations with family members and neighbors, and attended church sporadically. (Tr. pp. 314-318). The answers provided to

the questionnaires by Plaintiff's wife indicated he could not perform many of these things, thus, directly contradicting Plaintiff's testimony. (Tr. pp. 72-79). The fact that Plaintiff himself stated that he was able to perform these tasks in turn undermined his allegations of a complete disability, and supported the ALJ's decision to give his wife's testimony less weight. Furthermore, her testimony barely lasted a few minutes, not enough time to supply any particularly useful information at all.[6] The ALJ also opined that Plaintiff's wife was not medically trained to make exact observations regarding medical signs and symptoms, and therefore, the accuracy of her testimony was questionable, thus providing the express reasons required under case law to discredit her testimony.

It has been well established that, although the record may support more than one conclusion, we must uphold the Secretary "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortíz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*quoting* Rodríguez, 647 F.2d at 222); see also, Richardson v. Perales, 402 U.S. at 401. Where the facts permit diverse inferences, we will affirm the Secretary even if we might have reached a different result. Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Lizotte, 654 F.2d at 128.

In view of the above, the Court finds the decision of the Commissioner is supported by substantial evidence in the record as a whole, insofar as Plaintiff's condition did not preclude performance of work dealing with simple tasks and unskilled work, and where he

---

[6] The portion of the transcript of her testimony consisted of two and a half pages of double spaced testimony.

was qualified to perform other jobs available in the national economy. There is no error in giving lesser weight to his wife's testimony in light of its conflicting nature.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge finds there is substantial evidence on the record in support of the Commissioner's decision. As such, the Commissioner's decision is AFFIRMED.

Judgment is to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 4th day of May of 2015.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE